GARY CHACON
PO Box 132
Adelanto, CA 92301
(760)515-9242
sheepshowmedia@gmail.com

GARY CHACON, PRO SE PLAINTIFF

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CHACON, | Case No.: 5:24-cv-00140-MRA-JC |
| Plaintiff, | |
| v. | **PLAINTIFF'S STATUS REPORT** |
| CALVARY CHAPEL OF THE HIGH DESERT, a California Nonprofit Corporation; COUNTY OF SAN BERNARDINO; SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT; JARROD E. BURNS and JONATHAN CAMPOS, Individually, and in their capacity as Deputy Sheriffs for the County of San Bernardino County California, | Honorable District Court Judge Monica Ramirez Almadani<br><br>Honorable Magistrate Judge Jacqueline Chooljian |
| Defendants, | |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:

    The following Status Report is submitted pursuant to the Court's November 25, 2025 Order.

**(a) Summary of Proceedings and Principal Issues**

    **1. Summary of Proceedings**

This action was originally filed in the San Bernardino County Superior Court (Case No. CIVSB2229032) arising from events on November 1, 2020 at Calvary Chapel of the High Desert in Hesperia, California. The First Amended Complaint alleges violations of the First, Fourth, and Eighth Amendments, violations of the Bane Act, false arrest, and intentional infliction of emotional distress.

County Defendants removed the case on January 22, 2024. Calvary Chapel filed its Answer on January 23, 2024. County Defendants filed their Answer on January 26, 2024. Plaintiff filed motions to remand, which were denied, and the case has proceeded in this Court on the operative First Amended Complaint.

The parties participated in a Rule 26(f) conference and filed a Joint Report on March 26, 2025. The Court issued a Case Management and Scheduling Order on April 3, 2025. Plaintiff and County Defendants did not file status reports by the September 3, 2025 deadline. Calvary filed its status report after the deadline, and on November 25, 2025 the Court issued an in chambers order directing the non-complying parties to file status reports by December 5, 2025. Plaintiff submits this report in response to that order.

**2. Principal Issues in the Litigation**

This case concerns, among other things, the retaliatory nature of Plaintiff's arrest and the use of a private person's arrest by Calvary Chapel after Plaintiff refused to provide identification. Plaintiff contends that:

1. Deputy Burns twice requested Plaintiff's identification while Plaintiff was peacefully recording on the public sidewalk outside Calvary. Plaintiff lawfully refused because the deputy lacked reasonable suspicion or probable cause, and there is no general obligation to provide identification in these circumstances.

2. After Plaintiff refused, Deputy Burns asked Plaintiff if he wanted to be under arrest and stated that he would "figure that one out." Burns then, on information and belief, immediately solicited a private person's arrest from church personnel for "disturbing the peace," even though deputies had not witnessed any disturbance, no facts supported probable cause, and no crime had been observed. When Plaintiff confronted Burns and advised him that he had not witnessed any disturbance, Burns replied that he would "take the church's word for it," which Plaintiff contends demonstrates retaliatory intent and a failure to conduct any independent investigation.

3. Plaintiff contends that there was no articulable evidence that he intended to disturb the peace, which is an element of the disturbing the peace statute, and that there was no probable cause or reasonable suspicion to believe a crime had been committed. He further contends that the private person's arrest was unlawful and was obtained in retaliation for his refusal to provide identification and for recording on and around church property.

4. Plaintiff also alleges that, despite deputies having positively identified him through law enforcement databases and seeing his photograph and identification on the in car computer, they transported him to jail instead of citing and releasing him at the scene, even though the alleged offense was a minor non violent misdemeanor. Plaintiff contends that California's cite and release statute for misdemeanors, Penal Code section 853.6, should have applied and that the decision to book him into jail rather than issue a citation and release him at the scene was retaliatory, punitive, and intentional.

5. While in custody, Plaintiff was violently attacked by another inmate. Plaintiff contends that this would not have occurred had he not been falsely arrested or had he been properly cited and released at the scene. Within that overall frame, the principal legal issues include:

1. Whether Sheriff's Deputies Burns and Campos had reasonable suspicion and probable cause for the detention and arrest, including the use of a private person's arrest, or whether the arrest was retaliatory and in violation of the Fourth Amendment, the Bane Act, and related provisions of the United States and California Constitutions.

2. Whether the County and its deputies used threats, intimidation, or coercion, including the threat of arrest for refusing to provide identification, to interfere with Plaintiff's rights secured by the United States and California Constitutions and laws.

3. Whether taking Plaintiff to jail instead of citing and releasing him for a minor alleged disturbing the peace offense, after his identity had already been confirmed, was unjustified and retaliatory, and whether the resulting conditions of confinement and the assault by another inmate support Plaintiff's claims.

4. Whether Calvary Chapel, acting as a private entity in joint action with law enforcement, caused, instigated, encouraged, or ratified the unlawful detention and arrest through its participation in the private person's arrest process and coordination with deputies. Plaintiff anticipates that the private person's arrest form, once produced, will show that Calvary personnel agreed to cooperate with prosecution and acknowledged that a false arrest would expose them to liability. Plaintiff further notes that Calvary has admitted that it "chose not to prosecute" after initiating the private person's arrest, which in Plaintiff's view supports his claim that the arrest itself was not based on a genuine belief that a crime had occurred and was not supported by probable cause or reasonable suspicion.

5. Whether Plaintiff's recording activity on November 1, 2020, both on church property open to the public and on the adjacent public sidewalk, was protected activity under the First Amendment. Plaintiff's position is that a

property owner may ask a person to leave private property, but that request does not extinguish the person's underlying right to speak or record in other public spaces, such as the sidewalk.

County Defendants assert that the arrest was justified because Plaintiff allegedly refused to leave the property. Plaintiff disputes this characterization as contrary to the video and notes that he was not arrested or charged with trespass or refusing to leave. Plaintiff also disputes Calvary's characterization of him as "disruptive" and wearing "heavy clothing," and contends that the video shows he was peacefully recording in the parking lot and on the sidewalk, far from the sanctuary where church services were being held. Plaintiff has measured the distance and estimates that he was approximately 100 yards from the sanctuary where services were conducted indoors. There is no evidence that he was disrupting the church service. Furthermore, the video reflects that several of the individuals who aggressively confronted and surrounded Plaintiff were themselves wearing face masks. Plaintiff contends that even if perceived to be wearing "heavy clothing" dressing warmly in the local High Desert climate with wide fluctuating temperatures is not a reasonable basis to treat him as a security threat or to justify aggressive confrontation for peaceful recording.

**(b) Status of Service**

All named, identified defendants have been served and have appeared in this action. Calvary's status report asserts that "there are no DOE Defendants" and that all parties have appeared. Plaintiff notes, however, that the operative First Amended Complaint includes DOES 1 through 10. These DOES were pled as unknown Sheriff's Deputies, whose true identities may include additional deputy participants not yet disclosed by Defendants. Plaintiff has not been provided the body-worn camera recordings, police reports, audio belt recordings, dispatch communications, or the private person's arrest form, all of which remain solely within Defendants' control and may reveal the true identities of one or more DOE

defendants. Plaintiff therefore preserves his right to seek leave to substitute true names for DOE defendants once Defendants comply with their discovery obligations and the relevant identities are disclosed.

**(c) Additional Parties or Amendments**

Plaintiff also expressly preserves his right to seek leave to amend under Federal Rule of Civil Procedure 15 should discovery reveal additional individuals, beyond the currently pled DOE Sheriff's Deputies, who acted jointly with law enforcement or otherwise operated under color of state law in effectuating the November 1, 2020 arrest. The video evidence already shows that Deputy Burns did not witness any crime, lacked probable cause, and made statements such as "Okay, we'll figure that one out" and "Perfect, we'll see what we can do" only after Plaintiff lawfully refused to provide identification. The video further shows that Deputy Burns reinitiated contact with Calvary personnel only after Plaintiff's refusal. This sequence of events strongly indicates, and Plaintiff reasonably believes based on the available evidence, that Deputy Burns sought to obtain a private person's arrest he could not legally effectuate himself. The identity of the Calvary individual who executed the private person's arrest has been withheld by Defendants and remains unknown to Plaintiff.

Plaintiff does not yet possess the police reports, body-worn camera footage, belt recordings, dispatch communications, or the private person's arrest form, despite discovery requests. Defendants' ongoing refusal to produce this basic identity information is the sole reason Plaintiff has not already sought amendment. This concealment prevents Plaintiff from determining which Calvary actors functioned as instrumentalities of law enforcement and jointly participated in the retaliatory arrest.

If discovery confirms that additional Calvary personnel acted at the direction of deputies, participated as joint actors under 42 U.S.C. § 1983, conspired with deputies to effectuate the arrest, or otherwise operated under color of law, Plaintiff

will promptly seek leave to amend. Plaintiff expressly preserves all rights to seek such amendment, including the right to assert § 1983 joint-action and conspiracy claims, pendent state-law claims under 28 U.S.C. § 1367, and claims arising from any newly uncovered misconduct, fabrication of evidence, or institutional liability within the Sheriff's Department. Plaintiff further preserves the right to argue that any delay in naming additional defendants was caused solely by Defendants' concealment and withholding of information, and that amendment should relate back under Rule 15(c) based on Defendants' conduct rather than any lack of diligence by Plaintiff.

**(d) Status of Discovery**

    **1. Protective Order Dispute**

A substantial portion of discovery has been delayed because the County and Calvary insist on a standard protective order that is overbroad and would place unconstitutional restrictions on Plaintiff's First Amendment rights to report on matters of public concern, including the conduct of law enforcement and a church that is open to the general public.

Plaintiff understands from the Rule 26 scheduling proceedings that the Court would consider competing protective order proposals if the parties are unable to agree. In good faith, on September 15, 2025, Plaintiff sent defense counsel an email attaching his own Proposed Protective Order. His proposal is narrowly tailored to protect genuinely private identifying information, prohibits over designation, and contains explicit carve outs stating that clergy, public facing church staff, Sheriff's Department personnel, and information that is already public or obtained outside discovery cannot be designated confidential. It also makes clear that nothing in the order restricts Plaintiff's rights of speech, press, or religion regarding information he obtains independently of discovery.

Plaintiff requested that Defendants stipulate to this narrower order. Calvary's counsel responded but did not stipulate to the proposed order and did not agree to

Plaintiff's compromise. Plaintiff is not aware of any substantive response from County counsel regarding his proposed order. In the meantime, County Defendants have not provided full discovery pending their desired overbroad protective order, and Calvary has taken a similar position. Plaintiff asserts that Defendants are leveraging the protective order dispute solely to delay discovery and to continue an ongoing pattern of infringing his First Amendment rights, rather than to address a specific and legitimate privacy concern.

### 2. Plaintiff's Discovery Activity

When Calvary requested a copy of the November 1, 2020 video, Plaintiff produced it. Calvary's status report refers to this as an "informal" production, but Plaintiff, as a pro se litigant, simply complied with their request and provided the video he had. Plaintiff is prepared to respond to properly served formal discovery, and to engage in Rule 26 discovery in an orderly way, once the protective order dispute is resolved and Defendants cease conditioning all discovery on Plaintiff's agreement to the standard overbroad order.

Plaintiff notes that while Defendants have complained about the pace of discovery, they have not, in his view, fully complied with their Rule 26 obligations or produced key materials such as the private person's arrest form, complete reports, videos, communications, and contact information for all involved parties. Plaintiff understands that County counsel has responded to some requests with non responsive boilerplate objections and has not yet provided anything substantial on critical topics. Plaintiff views it as unfair that Defendants threaten motions to compel and sanctions while at the same time withholding core information and insisting on a protective order that would significantly restrict his ability to report on matters of public concern.

### 3. Defendants' Discovery

Defendants Calvary and County have indicated their intent to depose the Plaintiff and his wife. Plaintiff will fully participate in his own deposition once discovery is properly underway and the protective order issues are resolved.

Plaintiff strongly objects to the proposed deposition of his wife. This deposition constitutes undue burden and harassment as her sole connection to this matter is her marital status. She lacks any discoverable knowledge, as she was not a percipient witness to the incident, has zero involvement in Plaintiff's underlying First Amendment activities, and exercised no control or influence over the Plaintiff's presence at the church central to this case.

Given her complete lack of any relevant, non-privileged, material knowledge concerning the facts, the proposed deposition is entirely disproportionate to the needs of the case. Plaintiff asserts that the clear intent is to harass, intimidate, and inflict undue financial and emotional burdens upon Plaintiff and his family to deter the pursuit of this lawsuit.

Forcing her to sit for a deposition would necessitate the significant and undue expense of retaining separate legal counsel for a non-party witness, and constitutes an unwarranted intrusion. If Defendants persist without first establishing a specific, compelling, and material evidentiary basis that outweighs this burden, Plaintiff will immediately move the Court for a protective order to prevent harassment and safeguard against intrusion into privileged marital matters.

**(e) Contemplated Motions**

Depending on how the protective order and discovery issues develop, Plaintiff anticipates the following motions may be necessary:

**1. Motion regarding Protective Order**

Plaintiff has already drafted his own narrowly tailored proposed protective order and has circulated it to Defendants. If Defendants do not stipulate, Plaintiff anticipates submitting his proposal to the Court for entry and asking the Court either to adopt his version or, if the parties cannot agree to a narrower order, to

allow discovery to proceed without any protective order rather than impose restrictions that burden his First Amendment rights.

### 2. Motion to Compel Discovery

If Defendants continue to refuse to produce discovery, including but not limited to, the private person's arrest form, reports, identities and contact information of all involved individuals, videos, communications, and complete Rule 26 disclosures, Plaintiff anticipates filing a motion to compel. Plaintiff specifically objects to the standard protective order as overbroad and believes he should not be required to accept that order in order to obtain basic discovery.

### 3. Motion for Sanctions under Rule 37

Should Defendants persist in serving only boilerplate objections and continue to withhold clearly discoverable information without good cause and outside the scope of any standard protective order, Plaintiff may seek sanctions under Rule 37, including monetary sanctions and, if appropriate, evidentiary sanctions.

### 4. Motion for Summary Judgment

After discovery, Plaintiff anticipates filing a dispositive motion on liability focused on First Amendment retaliation, Bane Act violations, false arrest and lack of probable cause for the arrest and booking, emphasizing that the arrest was initiated solely in retaliation for Plaintiff exercising his lawful right to refuse an identification request that had no basis in California law.

**(f) Trial Estimate**

Plaintiff estimates that a jury trial will take approximately three to five court days, depending on the number of witnesses Defendants choose to call.

A jury trial has previously been demanded.

**(g) Settlement Status**

There have been no meaningful settlement discussions to date. Plaintiff is open to settlement discussions at any time, but believes they will be more

productive after Defendants have complied with their basic discovery obligations and the protective order dispute has been resolved in a way that does not require him to surrender his constitutional rights.

**(h) Suggestions to the Court**

1. Plaintiff respectfully requests that the Court address the protective order dispute promptly, so that discovery can proceed without further delay.
2. Plaintiff requests that the Court deny any request by Defendants to restrict him from recording or appearing on the public sidewalk outside Calvary Chapel. Plaintiff's presence on the sidewalk is protected by the First Amendment, and he is also exercising his freedom of religion by returning to the church to hold its leaders accountable in accordance with his sincerely held beliefs. Plaintiff's desire to return to the location is grounded in his religious conviction that disputes among believers should be addressed and resolved openly and personally. See, for example, Matthew 5:23–24, which instructs a worshiper who remembers that a brother has something against him to leave his gift at the altar, first go and be reconciled, and then return, and Matthew 18:15–17, which describes the process of bringing concerns first to the individual, then to church leadership, and then before the broader body. Plaintiff believes these teachings require him to confront the conduct at issue and to hold unrepentant church leadership accountable pursuant to scripture. He views Defendants' efforts to keep him away from the church and to restrict his ability to record as a continuation of the same conduct that gave rise to this case.
3. Plaintiff requests that the Court set a firm deadline for County Defendants and Calvary to produce outstanding discovery, including the private person's arrest form, all communications, complete Rule 26 disclosures, and all other discoverable materials, without conditioning production on the standard overbroad protective order.

4. Plaintiff is willing to participate in an informal discovery conference if the Court believes it would be helpful. However, Plaintiff respectfully requests that any conference or order focus on crafting a narrowly tailored protective order, if one is needed at all, consistent with his proposed order and his constitutional rights, rather than restricting his ability to report on matters of public concern.

Dated: December 1, 2025

Respectfully submitted,

*/s/ Gary Chacon*

Gary Chacon

Pro Se Plaintiff

# PROOF OF SERVICE

I, Gary Chacon, declare:

I am the Plaintiff in this action, appearing pro se. I am a citizen of the United States, over the age of eighteen, and a resident of San Bernardino County, California. My business address is 11530 Rancho Rd, #132, Adelanto, CA 92301.

On December 1, 2025, I electronically filed the **Plaintiff's Status Report** with the United States District Court, Central District of California, using the CM/ECF system.

METHOD OF SERVICE: CM/ECF

I hereby certify that all counsel of record are being served with a copy of the foregoing document via transmission of the Notice of Electronic Filing (NEF) generated automatically by the system. Said electronic service complies with Federal Rule of Civil Procedure 5(b)(2)(E).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 1, 2025, at Victorville, California.

*/s/Gary Chacon*

Gary Chacon

Pro Se Plaintiff